Good morning, your honors. May it please the court, my name is Katie Cimino. I'm an assistant federal public defender from the Northern District of West Virginia, and it's a pleasure to appear in this court for the first time this morning. I'm here on behalf of my client, Appellant Charles Edgar Ware, who asked this court to vacate the sentence imposed and to errors that were committed below. Before I turn to those errors, I'd like to first address the appellate waiver. Mr. Ware did not waive his right to appeal in this case. The waiver does not bar Mr. Ware's appeal because the sentence was not actually determined or based on a total offense level of 30 or lower, as called for by the plea agreement. Rather, the sentence was driven by an effective guideline range of either 33 or 34, and the district court's harsh sentence took Mr. Ware outside the four corners of the appellate waiver. If we look to paragraph 11 of the plea agreement in its entirety, which is found in the appendix at page 12, it's clear that the government and Mr. Ware had the same intent. Both parties intended to preserve the same rights to appeal. Those reservations of rights were merely expressed in two different ways in the plea agreement. The government sought to reserve its right to appeal any sentence outside the advisory guideline range, and so did Mr. Ware. The history of paragraph 11 in the plea agreement also helps one to understand the intent to that the language in that paragraph is crossed out, that is crossed out, excuse me, reads quote, sentences, end quote. And quite frankly, with the benefit of hindsight, that was probably a more accurate way to express Mr. Ware's intent, but the purpose of renegotiating that term in the plea agreement was so that Mr. Ware would have a right to appeal should he was not exactly a straightforward case and that one day we might have occasion to argue about the sentence that was imposed. Well, I thought he found the total offense level to be 29. Is that right? That is how the district court calculated the guidelines, Your Honor. Okay. So the other question I had, I couldn't find in the record, I know in the case of Mr. Ware, you colloquially talked about that he could sentence upwardly. Did he actually give him notice that he was gone, the part upwardly? No, Your Honor, the parties had no notice. Did you object to that? I objected to the, actually I wasn't the attorney at the sentencing hearing, but the sentence was objected to. But you agree that the district court should have given him notice that I'm going up to the top of the ladder? Well, of course we would have liked that notice, but I don't believe the district court was required to give us notice. You don't think under the rule that's the case? I can't think of the number right now in my head, but it seems to be there is. You have to give him notice that you're going upwardly depart so that they don't get ambushed. Yes, Your Honor. I think that is one interpretation of the rule that you're thinking of. And of course, I believe the attorney did argue that notice would have been proper in this case, that the parties could have focused on any issues that the court may have sought or seen might be a reason to upwardly bury or depart. Excuse me, in that you're getting to my, was it, I didn't, was this, I thought, is this a variant sentence? I believe it was, Your Honor. Yes. Is a notice required for a variant sentence? I don't believe notice is required. But if we interpret the provision in the plea agreement the way the government suggests, this waiver would have the same effect as it did before we changed it, which was almost a complete appellate waiver. So why change something if the effect is going to remain the same? The waiver provision was tied to the results and the ultimate sentence in this case, not to how the district court arrived at that sentence. Here, the sentence far exceeded what Mr. Ware contemplated and, quite frankly, what the government contemplated, I believe, since both parties advocated for a sentence of 120 months, which was the mandatory minimum sentence allowed. Finally, if the government contends that the waiver is not tied to the sentence, then we would contend that there's no meeting of the minds on that provision given that our contention is that the appellate waiver is tied to the sentence. And we would request that the waiver be unenforceable on that ground. Assuming that the court agrees that Mr. Ware does have a right to appeal, I would like to turn to the procedural error in this case. The so-called facts that the district court relied on that detail allegations of sexual abuse committed by Mr. Ware are not reliable, yet they were heavily relied upon the district court to impose an additional five years of incarceration on Mr. Ware. The court essentially sentenced Mr. Ware to these five extra years for something that was not without any support in the record, the district court used these unreliable allegations of sexual abuse committed allegedly nearly 40 years ago to inform its sentence. Because there's nothing in the record to substantiate these unreliable allegations, they are clearly erroneous facts, which render his sentence procedurally unreasonable. But there was something in the record that supported it, wasn't there? You said nothing. There were allegations in the pre-sentence report that detail these alleged acts, yes, your honor. But you think those were insufficient to meet the ponderers? Yes. Why so? We don't think that the pre-sentence report is an adequate basis for the judge to make a legally sufficient conclusion on a contested issue of material fact when no evidence, testimony or otherwise was taken. Was there an objection to the pre-sentence report? Yes, your honor. Okay. And was there an objection to the charges based on the interviews? There were three interviews, right? Back in 1994, your honor. Yes. Yes. Okay. And in one interview, the mother of one of Ware's victims testified, in the second the victim himself testified, and in the third a pastor testified. Correct? That's correct. And you did object on the grounds that they were unsubstantiated and unadjudicated. Yes, your honor. But the district court found sufficient indicia of reliability to credit them. And what exactly is your argument that that's not correct? Well, we don't believe that there was a sufficient indicia of reliability based on these mere allegations just being thrown or rolled into this pre-sentence report by way of a 1994 pre-sentence report. There was no investigation undertaken by the government as to these allegations, no investigation undertaken by the probation office either then or now as to these allegations. They did not lead to any charges. They were not considered by the But you know, it's interesting to me because a defendant, which I found remarkable when I first encountered the notion, a defendant can be sentenced on the basis of conduct of which they've been acquitted. Yes, your honor. So why would it be any more remarkable that they could be found, that their sentence can be based on allegations that were not proved if you have three people who are essentially averring to these? Well, your honor, we contend that there was no reliable information that the district court could have relied on to give these mere allegations credit. The government was not required to call witnesses or put on any information about these alleged statements. And in this country's jurisprudence, it's axiomatic that an allegation is not evidence of guilt. It's more consistent with a theory of innocence. Well, we're past guilt. We're into sentencing where the rules are a little different. Thank you. Thank you. We do realize that the sentencing court has broad discretion to consider uncharged and even acquitted conduct in a sentencing hearing. But there are limits to that discretion. And those limits include a defendant's due process rights to be sentenced on accurate and reliable information. And these factual matters that are taken into consideration by the district court do have to have some indicia of reliability, something beyond a mere allegation. So allegations can never form the basis of a sentencing determination? Is there anything specific about these that you take issue with? What is it? Is it their age? What is particularly troubling to you about these allegations? Part of it is the age of them, your honor, but just the fact that they are merely copy and pasted from the old pre-sentence report into this pre-sentence report, and that's all that the district court relied on to find that these had actually occurred when there's nothing to support that those acts did happen. Finally, I would turn to the substantive unreasonableness of Mr. Ware's sentence, which we believe is so primarily because, again, of these unreliable sexual abuse allegations, which became the tail that wags the dog regarding his sentence. A review for substantive reasonableness, of course, takes into account the totality of the circumstances, and here those circumstances would reveal that this was a run-of-the-mill child pornography possession case in so much as there is such a thing. The district court assigned undue weight to these unreliable aggravating allegations here, and the district court's assumption that Mr. Ware committed these acts of abuse is a view that is unsupported by the record. The view which motivated the court's perceived need to protect the public, especially children, from further crimes caused the district court to place unreasonable weight on this sentencing factor. Moreover, the 3553A factors do not justify this major deviation from the guideline range, given that each and every aspect of the offense was factored in already to the guideline range, which started Mr. Ware at a base offense level of 18 and wound up at a total offense level of 32. Give us some examples of the enhancements, counsel. There was a two-level enhancement for computer, number of images, age of the children. I never could understand enhancement for computers. I thought the whole idea of the crime was almost always on a computer, but you get enhanced because you use the very medium of the crime itself. But go ahead. Yes, Your Honor. And there was nothing about this case that took it outside the heartland of other child pornography possession cases. Not only were all the specific offense characteristics considered, but so was Mr. Ware's criminal history, given that it was properly calculated and resulted in a criminal history score. And he was also, of course, subjected to the sex crime. That being said, the factors listed at 3553A do not support this deviation or a 50% higher than the guideline range sentence. And because the court heavily relied on these allegations of abuse to the exclusion of other factors, such as Mr. Ware's age, we contend that was an important factor for the court to consider because, given his age at the time, this was nearly the equivalent of a life sentence for Mr. Ware, the 15-year sentence. And if the court had properly weighed the totality of the circumstance in this case, the only substantively reasonable sentence the court could have concluded was a guideline range sentence. Absent the sexual abuse allegations, the court's justification for a 50% increase in Mr. Ware's sentence was really nothing more than a recitation of the common characteristics found in most child pornography possession cases. And because the court's reliance upon speculation to justify this lengthy sentence, we contend is substantively unreasonable. So we would ask this court to vacate his sentence and remand it back to the district court. Did he testify? No, Your Honor. He didn't testify on his sentence? He did not. So these allegations that you say are not sufficient stood undisputed? We objected to them, Your Honor. But they were undisputed in terms of facts, evidence. We did not put on any evidence. And Mr. Ware did not testify. The court didn't really, the district court did not, he summarily overruled it without asking if either party had any evidence to offer. You mean the court didn't give your client an opportunity to speak and to give evidence in the face of these unnoticed allegations? Besides his right to allocute later on during the hearing, Mr. Ware said nothing. He said nothing at that point in time, either. But the court did give him a right to allocute prior to imposing a sentence. I see that I'm out of time, so if the court has no further questions, I'll return to my seat. Thank you so much. Thank you. Mr. Volgren? My name is Steve Volgren. I represent the United States. I'm an assistant United States attorney in Wheeling, West Virginia. I believe this case is clear as to the issues. One being whether or not Ware waived his right to appeal. The plain and unambiguous language of the appellate waiver indicates that if the court determines that the defendant's total offense under the advisory guidelines is level 30 or less, he waives that right. In analyzing that, the court has to look to whether or not it's valid, and whether or not the sentence or the waiver was within the scope of that waiver. The sentence was within the scope of that waiver. The court meticulously, the district court meticulously, went through the terms of the plea agreement with Mr. Ware and his counsel. Mr. Ware indicated that he understood all the terms. Specifically, the court went through the appellate waiver and the waiver of his right to a habeas corpus with Mr. Ware, and he indicated that he did understand the clear and unambiguous language of the waiver. And his counsel also indicated that it was her opinion that he did understand the clear and unambiguous waiver of his right to appeal. So next we turn to whether or not the sentence was within the scope. The judge determined that his total offense level was 29, and the court sentenced him using a variance above that sentence. And in response to a question posed by the court whether or not he utilized the pre-sentence report and Mr. Ware's... But he didn't. But he did. He didn't use an incremental increase in terms of getting to the point, did he? Instead he just used a variance. But didn't Mr. Ware, and I think the government seemed to suggest that the reason for that, you know, no more than 30, would relate to the sentence that he would get, wouldn't it? Well, certainly it could relate to the sentence. There's no doubt about that. That was the sole purpose for putting a limitation there, wasn't it? Well, originally, as Ms. Zimino indicated, that it was a complete waiver. If you get sentenced to anywhere within the statutory maximum, that was the initial proposed plea agreement that was tendered. That was scratched out. That was scratched out, negotiated. So it meant that he got something better. He did. Okay. What did he get better? He got, there obviously are other enhancements that a probation officer could have sought in these child pornography offenses, including S&M stuff. It could have resulted in something beyond the statutory maximum? No, not beyond the statutory maximum. Well, what did he get better then? In terms of the waiver? The change that you mean. Because if the probation officer would have sought to impose additional enhancements other than those stipulated to. Right. He wouldn't have been, that appeal, he could have appealed if the total offense level was over a 30. What's the statutory maximum? 20. 20 years. So he cut. Yes, I'm sorry. So he did. Yeah, I must have misunderstood. Yeah, you misunderstood. Because in other words, I'm about to say he got, so he cut the top five off. Correct. That's what that did. I don't think, I guess the question I want to know is, did he get him anywhere legally when he's sitting there and he just makes the offense level 29. Is there something legally wrong? I'm sitting there thinking, well, I'm going to give him 10 years instead of 15. I've done that calculation in my head. Is there anything, any legal basis to object him to that? So that's what happened here. He thought he was going to get a 10-year sentence. He absolutely thought that. But the court told him during the plea hearing a number of different times, I'm not bound to accept the sentencing recommendations of you or the government, and I'm free to sentence you to any sentence within the statutory maximum. And that was abundantly clear with the record. And I want to come back to the issue that you raised in regard to notice. There was a provision in the pre-sentence investigation report, Part F, on page 108 where the probation officer indicated, and I'll quote, there may be mitigating or aggravating factors in this case relevant to the defendant's personal history characteristics or the offense conduct that would impact the sentence pursuant to 18 U.S.C. 3553. So there was some sort of notice, at least through the probation officer, that the court could vary. And the court did vary. I'm surprised. Why isn't the government on the side of the plaintiff in a case like this, I mean the appellate? Because it seems to me in the long run, doesn't it hurt the government? You get people, we all know that if everyone in the criminal justice system pled not guilty and asked for a jury, the system would collapse. It would. Absolutely. We know that. Absolutely. So plea agreements and those kind of things, they make the system work. Correct? Agreed? 100%. But don't you think it's a danger when you make an agreement with someone and you're headed at no higher than 30, and as Judge Floyd said, you know everybody does a calculation. That lawyer does, too. Look, if it's at 30, that's based on a guideline. That's going to be 10 years. And the government comes up and says, We want 10 years. Would you really want a system like that? You would say, Wait a minute. You tell me 10, and we basically say this guideline will be the calculation, and we know that the language always says the judge doesn't have to. But that would be really sort of a problem, wouldn't it? You say this, but then the judge turns around and does something totally different and use 20-year-old or more, 40-year-old, affidavits from people who weren't subject to cross-examination and then ratchet it up five more years with effect to give him a life sentence based on his age, his demographic. Isn't there something wrong with that? We do have that as part of plea agreements. They're binding plea agreements. And judges are reluctant to accept binding plea agreements in a lot of cases because it takes away their discretion. There are many occasions where I go in and argue for a particular sentence at the guideline range, and specifically Judge Bailey will vary downward. So 10 years is not enough for somebody looking at photographs? Looking at what? I'm sorry. Looking at photographs. Judge Bailey found that it was not enough. I recommended 10 years, and that was part of the plea agreement. But just what my opinion, obviously, doesn't matter in terms of what a judge does. We're an unpredictable, unruly group, are we not? We don't pay the slightest bit of attention to the defendant, and we don't pay much attention to the government either. More so to the government, I believe. Not unless you're advocating for more. Then they turn and say, how much do you think we should give him? Judge, I think he ought to get 20 years. Based on what I see, they listen quite a bit to you. The ones I see that don't listen to you with them are the ones that are more often like that. But anyway, go ahead. Let me talk now about the judge's rationale in regard to the sentence. The Fourth Circuit has stated in the Evans case, and it talks about picking apart pieces of an analysis, and this court has got to give deference to the district court in terms of what it thinks was reasonable in the sentence. And you can't pick apart one particular analysis or one particular reason why the judge sentenced him and say, well, just because the judge erred in that regard that the entire sentence was unreasonable. The court, once again, made explicit findings in regard to why a sentence of 180 months was appropriate in his mind, and that Ware was involved in a prior offense with a minor, that he was convicted of mailing obscene matter from his home in Northern District of West Virginia out to Oregon or California. He was concerned that it was a hands-on offense, as I recall. What he called a hands-on offense. He did. The factual basis behind that offense is that Ware took the photographs of the little boy and then mailed them out, and he was able to plead guilty to mailing them out rather than, I guess, producing child pornography, which is what it was. He produced the child pornography by taking a photograph of the boy, and the boy said he coerced him into getting undressed and taking the photos. Wasn't that considered one of those criminal history points? Oh, it certainly was, but he got zero points for that because it was too old. But nonetheless, that was the basis of the mandatory minimum sentence of 10 years. And the court went on to talk about that child pornography is not a victimless crime and that every time these matters are mailed or distributed or reviewed, these victims are re-victimized. Well, you know, the Fourth Circuit now has a case that I dissented, I might say. But the Fourth Circuit said you can draw cartoons and things like that depicting children, and there's no victim at all. No, there wouldn't be in that case. But in this case, there were over 8,000 images of child pornography that Mr. Ware had. And that was another factor in that the guidelines, you get an enhancement for, I think it caps out at 600 images. He had 8,000 images of child pornography, and that was another reason and basis why the court sentenced Mr. Ware to 180 months. And in my mind, some of the most important reasons why he varied was because of his two prior convictions for failing to register as a sex offender and the facts in this case where he hid his Internet connection from the sex offender registry, put it in his father's name and into a fake address. And those were the basis why the court found that he thought that he needed to protect the community and children from Mr. Ware in addition to the uncharged 1978 allegations. And just to be fair, there were interviews conducted of the mother of one of those victims, of the reverend, and I believe one other individual, and they all confirmed that the acts happened, but Ware denied those. The reverend was there? No, the reverend interviewed three other boys that were victims. So you had one of the victims' mom who was interviewed and confirmed that her son, when he was 8, was abused by Ware. One of the victims himself was interviewed, and it happened when he was 12 or 13 years old. And then a reverend interviewed that victim and two of his brothers who indicated that it happened. But Ware, in a separate interview, denied all that, and that was contained within the pre-sentence report during the investigation. Ware said it didn't happen. So in the evidence, it does not stand undisputed. No, Ware denied it. No doubt Ware denied it. The court's rationale in finding the 180-month sentence was based on a number of different factors, and I don't think this court should say that because he might have considered some improper factor or a factor that wasn't proven, which I think it was proven, it was contained in the pre-sentence report, that you could separate that out and validate the entire sentence. Mr. Colgan, I probably shouldn't ask you this. It's probably not fair, but I'm going to ask you anyway. But if he had given him 20 years, you could say the same thing, couldn't you? Could. And you would say our hands would be tied as to substantive unreasonable, wouldn't you? That's where the analysis would be, I believe. That's the problem, isn't it? That certainly is a problem. The Supreme Court comes up with a concept and doesn't give any really guidelines of what it means. Because they're like, 20, 25, right? Or the plea agreement could have read 121 months. If he's sentenced above 121 months or 140 months, it's tied to a specific number. But here it said—are we talking about the waiver, or are you talking about a reasonable sentence? I'm talking about the waiver going up to substantive. I'm not talking about procedure. I was having a little trouble with that, too. I didn't know whether we were talking about the statutory maximum. You're talking about the 29th. Right, yeah. I'm talking about the 29th. Yeah, it could have been tied to a specific number of months' sentence. But here it was tied to a guideline, a total offense level. So it really meant nothing. It did, it did. Because if the probation officer would have found that he was someone who engaged in a propensity to commit sexual abuse and there had been another five-level enhancement, he could have appealed then. Because the total offense level, instead of a 29, would have been a 34. But he gets there the same way with a 35, 53 variance. Because it goes up to where he wants to go. Absolutely. So it meant nothing. That's what it meant. In effect, it means nothing. I believe that it did. I believe it was bargained for. And, you know, in terms of from the statutory maximum— I'm just amazed how many people plead guilty. Why plead guilty? As the old saying goes, if you can't win your case, tap the court documents. I mean, really, it's amazing how many lawyers get people to sign these agreements and the judge turns around and gives people, okay, 15 years. Well, most cases are sentenced within or below the guidelines, at least in the Northern District of West Virginia. There are a few cases that judges vary upward. And this is one where Judge Bailey felt that he thought it was necessary to vary upward to protect the community. And that stands almost unassailable in a court of appeals, doesn't it? No, it doesn't, because you have that ability to find that it was substantially unreasonable. It was unreasonable, but you have to apply the standard of review, which has given great deference to his opinions and his findings. But you have that authority to do that. Any other questions? If not, I'll defer my six minutes. Thank you, Mr. Bogers. You've been helpful. Ms. Amino, you have some time reserved. Your Honors, I would just like to speak to the point that— what the district court's considerations were when imposing the sentence. And I think it's clear from the record that the district court heavily relied, almost to the exclusion of other factors, on these unreliable allegations of abuse. I believe the reasoning for the sentence was found in these alleged allegations that, for the district court's reasoning, about 30% of his overall reasoning were related to these allegations. He even went so far as to create these storylines, almost, about how Mr. Ware enticed, allegedly, these children with fire trucks and ambulances and different things like that, and Boy Scouts, that were not in the record. Yet, again, the district court heavily relied upon those— They were not in the record. They were not proven, I should say. Oh, yeah, right. They were in the pre-sentence report. You've got to be careful, Counsel, when you say that. It's in the record. It's in the record. Yes, they were in the pre-sentence report, but they were objected to, and we don't believe proven by preponderance of the evidence. So, again, we— What standard should we use to review that finding that the public needed to be protected and that 15 years was an appropriate sentence? What's our standard in reviewing the district court's decision? An abuse of discretion, Your Honor. Kind of tough, isn't it? It is. So where are we left? Give us some guidelines. Really, this is not some rogue-type question. I'm very serious when I've looked at some of the opinions I've written. I've written quite a bit about the fact that, you know, what does it mean to have a substantive reasonableness as a protection under the law, but then nobody knows what it means. So help me. What does it mean? How is this case that we could say, whatever the line is, this crossed it. Give me your best two-minute answer to that. Or whatever. I mean, less, but you don't have much time. Go ahead. Well, I think we have to look to see if the court was out of bounds in the sentence that it imposed on Mr. Ware. Do you know what I mean? Out of bounds is the conclusion. How do we get that it was there? You've already concluded out of bounds. I want an analysis. What about this case that we can say, yes, that's the line, and we can see that it was crossed. Tell me. Your best argument. Again, I think it would be a miscarriage of justice for this sentence to stand given these unreliable, unproven. Counsel, you're going again to the conclusion. We've got to decide the conclusion, but you help us, give us the breadcrumbs to make that trek to find miscarriage and unreasonableness. What is it about this case that went wrong, that line was drawn? Do you know? Because this is the best chance you have for your client. You don't get many. This is your time. Well, I think given these, again, I'm stuck to these allegations, that they were not proven, that they are words in the pre-sentence report that the district court wholeheartedly relied on and took for gospel. I know that the court can, of course, take hearsay into account during sentencing, but we have instances of double and maybe even triple hearsay here, and we just think on this record that it's substantively unreasonable, which I know is the conclusion. But for the sentence to stand based on what's in the record, it's unsupported. Because of unfairness, perhaps? Yes, Your Honor. He did dispute these. He did. He was about to say that. I looked over at you. Counsel was very, very, that's what I love about counsel, forthrightness. He helped you with that. I don't know. She didn't know that he did. I like that in terms of counsel because it's about justice and about getting it right. But is it something in a sense about unfairness? He testified. He said he was there, but none of these people came to court, did they? No, no, Your Honor. Were there photographs there? Anything about it that would test their credibility that the judge had before them? No, there was nothing. No testimony, no documentation. As I said, just merely words on paper. But these same things could have been said about anybody, any citizen, really? Really, couldn't they? They could. That was the kind of things that I was thinking you want to argue in terms of why this case might be different. Thank you, Judge. I appreciate this comment. Do you think that we can presume that because Judge Bailey accepted the pre-sentence report that that meets the standard of preponderance of evidence? In other words, it's more likely true than not because he accepted it. He did accept the pre-sentence report, but I believe given that we objected to it, the government had a burden of persuasion as to these allegations that we were objecting to. Do you have some authority for that? I'm sorry. No. I'm sorry. You're fine. No, Your Honor. Thank you. Thank you, Your Honors. Thank you so much. We'll come down and greet counsel and proceed to our last case for today.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd